UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID McCRORY,

       Plaintiff,                                       Civil Action No. 14-11992
                                                          Honorable Thomas L. Ludington
v.                                                            Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 16]**

David McCrory ("McCrory") commenced this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties filed motions for summary judgment, which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.      RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge ("ALJ") erred because substantial evidence did not support his finding that McCrory could perform a significant number of jobs in the national economy. Accordingly, the Court recommends that McCrory's motion for summary judgment [14] be GRANTED IN PART to the extent it seeks remand, and DENIED IN PART to the extent that it seeks an award of benefits, the Commissioner's motion for summary judgment [16] be DENIED, and, pursuant to sentence

four of 42 U.S.C. § 405(g), the Commissioner's decision be REMANDED to the ALJ for further consideration consistent with this Report and Recommendation.

## II. REPORT

### A. Procedural History

On September 16, 2011, McCrory filed the instant applications for both DIB and SSI, alleging a disability onset date of July 1, 2011. (Tr. 66, 75). The claims were initially denied on November 23, 2011. (Tr. 64-65). Thereafter, McCrory filed a timely request for an administrative hearing, which was held on September 18, 2012, before ALJ J. T. McGovern. (Tr. 26-63). McCrory, who was represented by attorney Stephanie Rassi, testified at the hearing, as did vocational expert Diane Regan. (*Id.*). In a written decision dated January 11, 2013, the ALJ determined that McCrory is not disabled. (Tr. 14-22). On March 31, 2014, the Appeals Council denied review. (Tr. 1-5). McCrory filed for judicial review of the final decision on May 19, 2014. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful

2

> activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240, at *21 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . [i]f the analysis [then] reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    **C.**    **Background**

        *1.*    *Disability Reports*

In an undated disability report, McCrory indicated that he suffers from sarcoidosis and a "lung problem." (Tr. 165).  McCrory reported that he stopped working on July 1, 2011, as a result of these conditions. (*Id.*).  With respect to his education level, McCrory completed the twelfth grade but never pursued any further studies. (*Id.*). Prior to stopping work, McCrory was employed as an assembler, a quality control supervisor, and a "Hi-lo" driver. (Tr. 166).  McCrory

3

stated that Jonathan Cohn, M.D., treated him for the foregoing physical impairments. (Tr. 168). At the time of the report, McCrory was taking Voriconazole to treat a lung infection. (Tr. 167).

In a function report dated September 27, 2011, McCrory stated that he lives in a private home with his family. (Tr. 172). When asked how his conditions limited his ability to work, McCrory indicated that, "when working, playing with my kids, or yard work in about ten minutes I get shortness of breath and if I go . . . [for] 35 minutes I cough up blood for about ten to 15 minutes and my chest hurts really bad . . . [s]ometimes in my sleep my lungs fill up with blood and it wakes me up out [of] my sleep by coughing up blood." (*Id.*). His daily activities consist of walking his children to school, cooking dinner, cutting the grass, watching television and reading. (Tr. 173). McCrory stated that before the onset of his condition, he used to care for his children, play sports, perform outside housework, and assist with the care of his cats. (*Id.*). He also has significant difficulty sleeping through the night because his conditions leave him gasping for air. (*Id.*). McCrory reported that he manages his own personal hygiene needs and prepares his own daily meals (primarily sandwiches and frozen dinners). (Tr. 173-74). He mows the lawn, performs household repairs, and irons his clothing. (Tr. 174). He indicated that he goes shopping once a month for food, clothes, and other items. (Tr. 175). McCrory is able to drive a car by himself and he goes outside "all the time." (*Id.*). He is capable of paying bills, counting change, and handling a checking and savings account. (*Id.*). McCrory noted that he does not have any problems getting along with family, friends, or neighbors. (Tr. 177).

When asked to identify functions impacted by his condition, McCrory checked lifting, squatting, bending, standing, reaching, walking, talking, stair climbing, and completing tasks. (*Id.*). With respect his physical limitations, McCrory indicated that, " I can only lift 10 pounds, squatting - 3 times, bending - 1 or 2 times, standing - 10 minutes, reaching - 2 minutes, walking -

4

1 mile in 10 minutes, talking - not long, stair climbing - about 20 stairs, completing tasks - not long." (*Id.*). He is also able to walk one mile before needing to rest for one hour. (*Id.*). As for side effects resulting from his prescription for Voriconazole, McCrory stated that he suffers from sensitivity to light. (Tr. 179).

        2.     *McCrory's Testimony*

At the time of the September 18, 2012 hearing before the ALJ, McCrory stated that he suffered from sarcoidosis while working for his last employer as a "hi-lo" driver. (Tr. 37). However, his condition was apparent as early as 2000. (Tr. 40). He indicated that his supervisors would let him "sit down for a few minutes" if he was coughing up blood and then let him return to work. (Tr. 39). McCrory reported that he underwent lung surgery in November 2011 to treat the sarcoidosis and that he remained in the hospital for about a month due to post-operative complications. (Tr. 40). McCrory further stated that he suffers from shortness of breath on a daily basis depending on his activity level. (Tr. 41). This symptom is exacerbated when he is ascending the stairs in his own home, which forces him to "go lay down . . . for a few minutes because the shortness of breath comes . . . the lightheadedness." (Tr. 42). McCrory uses both an inhaler and a nebulizer to treat his lung condition and he alleged sensitivity to smoke and fumes. (Tr. 42-43). However, McCrory testified that he smokes marijuana to increase his appetite and decrease the vomiting caused by his condition. (Tr. 43). He also takes Bayer aspirin to treat chest pains and vitamin supplements to treat a vitamin D deficiency. (Tr. 45).

As for his daily routine, McCrory indicated that he gets up in the early morning gasping for air and usually suffers from nausea. (Tr. 47-48). He reported that he can attend to his own personal hygiene and dress himself. McCrory assists his wife with household chores such as washing dishes, cooking, laundry cleaning and food preparation (i.e., sandwiches and simple

meals). (Tr. 48). McCrory testified that he plays video games with his children for approximately 10 to 15 minutes per day "to have some family time" and that he assists them with their homework. (Tr. 49-50). On the occasions when he feels "healthy," he takes the children to the park or goes fishing with them. (Tr. 50). McCrory stated that he does not drive a car but that his wife is able to transport him. (*Id.*). He performs minimal grocery shopping and usually has "to lean on the shopping cart or either go into the car and sit until my wife gets done." (Tr. 51). McCrory reported that he does not take extended trips and that he goes for brief walks around the block of his home. (Tr. 53).

During examination by his attorney, McCrory stated that he used to suffer from repeated episodes of aspergillus (which caused his lungs to fill with blood) twice a month. But, after his November 2011 surgery, the episodes occur only once every three months. (Tr. 54-55). He reported post-surgery symptoms of nausea, shortness of breath, accelerated heart rate, and constant pain. (Tr. 55).

### 3. *Medical Evidence*

The Court has thoroughly reviewed the record, and will discuss the relevant medical evidence within the analysis portion of this Report and Recommendation.

### 4. *Vocational Expert's Testimony*

Diane Regan testified as an independent vocational expert ("VE"). (Tr. 58-62). The ALJ asked the VE to imagine a claimant of McCrory's age, education, and work experience, who is limited to light work; lifting ten pounds regularly and 20 pounds occasionally; sitting for two hours; standing for six hours; but would require the ability to sit and stand at 30-minute intervals; no climbing of ropes, scaffolding, or ladders, but could perform other postural activities occasionally; no concentrated exposure to dusts, fumes heat, or cold. (Tr. 60). The VE stated

that the hypothetical individual would not be able to perform any of McCrory's past relevant work, but would be capable of working in the positions of inspector (3,000 jobs in southeastern Michigan), office helper (5,000 jobs in southeastern Michigan), or sorter (2,000 jobs in southeastern Michigan). (Tr. 61). The ALJ then inquired whether a hypothetical claimant who would be further limited to lifting no more than ten pounds, sitting for six hours and standing for two hours in an eight-hour workday, along with "the same sit/stand option," could perform jobs at the sedentary level. (*Id.*). The VE responded that this individual would be capable of working in the positions of inspector (2,000 jobs in southeastern Michigan), bench assembler (3,000 jobs in southeastern Michigan), or packer (1,500 jobs in southeastern Michigan). (*Id.*). At this juncture, the ALJ asked the VE whether the hypothetical individual would be capable of performing the above work if he or she required unscheduled rest breaks or other occasional breaks throughout the workday. (Tr. 62). The VE responded that there would be no jobs in the national economy that such an individual could perform. (*Id.*). Finally, the ALJ inquired whether the individuals from the first and second hypotheticals would be capable of performing the above work if they would likely be absent from work approximately two times per month. (*Id.*). The VE again responded that these imagined claimants could not perform "competitive employment." (*Id.*).

    **D.**    **The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that McCrory is not disabled under the Act. At Step One, the ALJ found that McCrory has not engaged in substantial gainful activity since July 1, 2011, the alleged onset date. (Tr. 16). At Step Two, the ALJ found that McCrory has the severe impairments of sarcoidosis, aspergilloma and hemoptysis. (*Id.*). At Step Three, the ALJ found that McCrory's impairments, whether considered alone or in combination,

7

do not meet or medically equal a listed impairment. (Tr. 17). The ALJ then assessed McCrory's residual functional capacity ("RFC"), concluding that he is capable of performing sedentary work with the following limitations:

> the claimant can lift or carry up to 10 pounds maximally; the claimant can stand and/or walk (with normal breaks) for a total of 2 hours in an 8-hour workday; the claimant can sit (with normal breaks) for a total of 6 hours in an 8-hour workday; never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; and can occasionally climb, balance, stoop, crouch, kneel, and crawl; avoid concentrated exposure to extreme cold or extreme heat, irritants such as fumes, odors, dust, and gases, poorly ventilated areas; the claimant requires a sit/stand option at the workstation while remaining at the workstation (option means that the individual can sit/stand at will while performing their assigned duties).

(Tr. 17).

At Step Four, the ALJ determined that McCrory is unable to perform any past relevant work as a "Hi-lo" driver (which is classified as semi-skilled, medium work), an automobile assembler (which is classified as unskilled, medium work), or an inspection supervisor (which is classified as skilled, light work). (Tr. 20). At Step Five, based in part on the VE's testimony, the ALJ concluded that McCrory is capable of performing a significant number of jobs that exist in the national economy. (Tr. 21-22). As a result, the ALJ concluded that McCrory is not disabled under the Act. (Tr. 22).

  **E. Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d

8

1:14-cv-11992-TLL-DRG Doc # 17 Filed 06/23/15 Pg 9 of 17 Pg ID 586

647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *McCrory v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (stating that "an ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.  Analysis**

In his motion for summary judgment, McCrory argues that the ALJ's decision should be reversed because: (1) he did not adequately evaluate the objective medical record in formulating his RFC determination; (2) he improperly found that plaintiff's subjective complaints were not credible; and (3) his RFC finding was not consistent with the VE's testimony.  Each of these arguments will be addressed in turn.[1] (Doc. #14 at 10-14).

*1.  RFC Assessment*

Although McCrory maintains that the ALJ's RFC assessment is not supported by substantial evidence because it is devoid of any "rationale" or "discussion of [his] medical problems" (*Id.* at 11), his argument mischaracterizes the extent and scope of the ALJ's analysis of the objective medical evidence.  The ALJ's decision makes clear that he considered McCrory's medical history, with a particular focus on the period after the July 1, 2011 alleged onset date. (Tr. 18-19).

Medical records discussed by the ALJ from this time period indicate that McCrory was admitted to the hospital on August 29, 2011, complaining of chest tightness and palpitations. (Tr. 217).  He reported occasional shortness of breath and mild lightheadedness, but denied any previous episodes of chest pain or palpitations. (*Id.*).  An examination of his respiratory system revealed "[n]o rhonchi, rales or wheeze" and chest X-ray images depicted "a crescent-like lucency in the superior aspect of the opacity suspicious for possible cavitary lesion with

---

[1] To the extent McCrory alleges that the ALJ neglected to discuss the weight accorded to the opinion of his treating physician (Doc. # 14 at 13), he fails to identify: (1) who the treating source is; (2) the substance of any medical opinion he or she may have rendered; and (3) its relevance to the disposition of this case.

intracavitary body like fungus ball." (Tr. 218-19). The attending physician noted a history of sarcoidosis and confirmed this diagnosis along with hemoptysis and deep venous thrombosis prophylaxis. (Tr. 217, 219). A follow-up CT-scan on September 2, 2011, showed "pulmonary sarcoid with extensive interstitial change in both upper lobes and bilateral upper love inflammatory nodules consistent with sarcoid." (Tr. 222). Doctors also discovered "probable aspergilloma in the right upper lobe nodule" and "[m]ultiple mediastinal lymph nodes consistent with the known sarcoid." (*Id.*). McCrory was prescribed an anti-fungal treatment for the aspergilloma. (*Id.*).

After oral anti-fungal treatments proved to be ineffective, on November 3, 2011, McCrory underwent an upper right lobectomy to remove the aspergilloma, and a mediastinal lymph node dissection. (Tr. 249-51, 338). Despite McCrory's initial reports of significant post-operative pain in his chest (which eventually subsided), post-surgical consultation notes indicated that a CT-scan "reveal[ed] no active sarcoidosis of [the] lungs." (Tr. 338).

The ALJ also reviewed the November 15, 2011 consultative examination performed by Ernesto Bedia, M.D. (Tr. 385-87). Dr. Bedia found that McCrory exhibited "diminished breath sounds in the right lung area," but no "crackles or wheezes." (Tr. 386). He indicated that McCrory's surgical wounds were still healing, with no evidence of respiratory distress, flaring of the "ala nasi," or use of accessory muscles during respiration. (Tr. 387). The results of McCrory's pulmonary function test report were normal and no medical contraindication was present. (Tr. 388). A neurologic and orthopedic supplemental report stated that McCrory could sit, stand, bend, stoop, carry, push and pull without limitation and his gait, extremity reflexes, and ambulation all appeared to be normal. (Tr. 394).

The ALJ noted that chest X-rays performed in January 2012 showed evidence of

11

McCrory's prior November 3, 2011 surgery, but detected "[n]o active parenchymal disease." (Tr. 489). The pulmonary vasculature and the contour of the mediastinum appeared to be normal. McCrory's trachea was not abnormally deviated and his lungs were clear. (*Id.*). During office visits with Jenny P. Shih, D.O., from April through July 2012, McCrory's respiration rhythm and depth were normal and he exhibited "[c]lear to auscultation." (Tr. 436, 439, 441). While McCrory initially complained of decreased appetite and weight loss, Dr. Shih's notes reflect that he eventually began to gain weight and the doctor continued to treat his sarcoidosis and aspergillosis conditions with medication. (Tr. 440-442).

In addition, the ALJ evaluated the state agency medical consultation performed by Tariq Mahmood, M.D. (Tr. 71-72). In concluding that McCrory could perform light work, Dr. Mahmood opined that he could occasionally lift up to 20 pounds; frequently lift up to 10 pounds; sit or stand for approximately six hours during an eight-hour workday; occasionally crouch, crawl, and climb ladders, ropes, and scaffolds; and climb ramps, balance, stoop, and kneel without limitation. (*Id.*). The doctor also recommended that McCrory "avoid even moderate exposure" to fumes, odors, dusts, gases and poor ventilation, although he did not preclude McCrory from working in extreme temperature conditions. (Tr. 72).

After considering the above medical evidence, McCrory's testimony, and the statements he made in his functional report, the ALJ determined that McCrory retained the RFC to perform a reduced range of sedentary work. (Tr. 17-20). In reaching this conclusion, the ALJ gave some weight to the opinion of Dr. Mahmood, but reduced the doctor's RFC assessment from light work to sedentary work by limiting McCrory to maximally lifting 10 pounds; no extreme temperature conditions; and adding a sit/stand option at will to accommodate his history of sarcoidosis and to "alleviate his symptoms." (Tr. 19-20). The ALJ weighed McCrory's

allegations of more stringent limitations, but, as discussed below, appropriately discounted them because they conflicted with the medical evidence and his reported activities of daily living. (Tr. 20). These were appropriate considerations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (an ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record). Thus, the ALJ's RFC finding is well-reasoned and supported by substantial evidence.

        2.     *Credibility Evaluation*

Next, McCrory contends that the ALJ erred in finding his subjective complaints to be less than fully credible. (Doc. # 14 at 12). Specifically, McCrory asserts that the ALJ altogether failed to consider any of his subjective complaints. This argument is entirely unpersuasive.

The Sixth Circuit has held that an ALJ is in the best position to observe a witness's demeanor and to make an appropriate evaluation as to his credibility. *Walters*, 127 F.3d at 531. As a result, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). As the Court noted above, an ALJ is not required to simply accept the testimony of a claimant if it conflicts with the medical reports and other evidence in the record. *See Walters*, 127 F.3d at 531. Consequently, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's assertions regarding the level of his pain are credible. Soc. Sec. Rul. 96-7, 1996 SSR LEXIS 4, at *3 (Jul. 2, 1996); *see also* 20 C.F.R. § 404.1529.

In this case, the ALJ did, in fact, appropriately consider McCrory's testimony, and

ultimately rejected his subjective allegations on credibility grounds in light of the objective medical evidence and McCrory's own account of his daily activities. (Tr. 18, 20). Although McCrory attested that he suffers from "shortness of breath with minimal activities, requiring him to sit or lie down and rest" (Tr. 20), the ALJ noted that he remains able "to care for his personal needs and dresses independently." (*Id.*). Moreover, McCrory reported that he performs some housework, mows the lawn, makes simple meals, conducts online activities, occasionally goes shopping, assists his children with homework, walks them to school and accompanies them to local activities. (*Id.*, 173-74). Additionally, the ALJ stressed the "absence of any significant longitudinal treatment history" that would otherwise verify McCrory's subjective complaints. (Tr. 20).

In sum, the ALJ appropriately considered McCrory's subjective complaints and testimony and gave specific reasons for finding his testimony not credible. As noted above, his reasons are supported by substantial evidence of record. As such, the Court finds that the ALJ did not err in assessing McCrory's credibility. *See Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.") (*citing Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).

### 3. Step-Five Determination

Finally, McCrory assigns error to the ALJ's Step-Five finding because the questions he posed to the VE envisioned a hypothetical claimant requiring a sit/stand option at 30 minute intervals, whereas the ALJ's RFC finding more restrictively limited McCrory to a sit/stand option at will. (Doc. # 14 at 14). A number of cases from this district support McCrory's position. For example, in *Ferguson v. Comm'r of Soc. Sec.*, No. 11-15072, 2013 U.S. Dist.

LEXIS 19328, at *17-19 (E.D. Mich. Jan. 23, 2013), the claimant testified before an ALJ to needing to change positions every 10-15 minutes. The ALJ's subsequent question to the VE included a "sit/stand option," but did not reference any frequency limitation. As in McCrory's case, the RFC ultimately adopted by the ALJ included a sit/stand "at will" limitation. In remanding the matter to the ALJ, the court wrote that "[t]he imposition of a sit/stand *at will* requirement … is the most restrictive of all the sit/stand options….If the ALJ believed that Plaintiff required a sit/stand at will restriction [rather than at less frequent intervals], his failure to include it in the hypothetical question invalidates the VE's job findings." *Id.* (italics in original); *see also Powers v. Comm'r of Soc. Sec.*, No. 13-10575, 2014 U.S. Dist. LEXIS 28243, at *13 (E.D. Mich. Jan. 22, 2014) (noting that, in the event an ALJ "ultimately determines that a plaintiff's RFC is more restrictive than the limitations posed in the hypothetical question, the ALJ would have no relevant testimony from the VE to assist in making a determination."); *Biestek v. Comm'r of Soc. Sec.*, No. 13-11887, 2014 U.S. Dist. LEXIS 105536, at *21-24 (E.D. Mich. May 30, 2014). The Court is persuaded by the above precedent. Since the VE never testified about whether McCrory could perform a significant number of jobs in the national economy that encompass a sit/stand option at will, the ALJ's Step-Five determination is not supported by substantial evidence.

The Commissioner counters that this error "is harmless because an at-will sit/stand option is compatible with the jobs the VE identified." (Doc. # 16 at 18). To this end, the Commissioner cites several recent cases where VE's testified that a sit/stand option at will did not preclude claimants from performing the very same jobs available to McCrory (inspector, bench assembler, and packer). The Court declines to follow this approach for two reasons. First, a district court's review of a Social Security appeal is limited to the evidence presented to the ALJ. *See Salyer v.*

15

*Comm'r of Soc. Sec.*, 574 F. App'x. 595, 597 (6th Cir. 2014) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). And in view of the administrative record *in this matter*, the Court "has no way of knowing if the VE's job numbers reflect the inclusion of the 'at will' restriction later stated in the RFC." *Ferguson*, 2013 U.S. Dist. LEXIS 19328, at *18. Second, it would be unfair for the Court to decide this issue without affording McCrory's attorney a full and fair opportunity to question the VE regarding McCrory's ability to perform the aforementioned jobs with a sit/stand option at will. *See Butler v. Comm'r of Soc. Sec.*, No. 96-1211, 1997 U.S. App. LEXIS 11802, at *9 (6th Cir. May 15, 1997) (noting that "due process requires that a claimant be given the right to cross-examine individuals who testify"). Remand also serves the purpose of highlighting the importance of properly translating the VE testimony into the ultimate RFC adopted by the ALJ.

Although remand in this instance may well not result in a different outcome, as in *Ferguson*, *supra*, the Court nonetheless recommends this course so that the ALJ may properly determine whether McCrory can perform a significant number of jobs in the national economy that provide for a sit/stand option at will.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that McCrory's motion for summary judgment [14] be GRANTED IN PART to the extent it seeks remand, and DENIED IN PART to the extent that it seeks an award of benefits, the Commissioner's motion for summary judgment [16] be DENIED, and the Commissioner's decision be REMANDED to the ALJ for further consideration consistent with this Report and Recommendation.

Dated: June 23, 2015                                s/David R. Grand
Ann Arbor, Michigan                                 DAVID R. GRAND
                                                    United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 23, 2015.

        s/Eddrey O. Butts
        EDDREY O. BUTTS
        Case Manager